[Kent, Ch. J.
There is a case in 2 Saund.‡ which seems to be against your doctrine.]
[T. A. Emmet So is the case of Bateman v. Allen, in Cro. Eliz. 347.]
In the cases of Allen v. Rivington and Bateman v. Allen, it will be found that the defendants entered upon the prior possessors and ousted them. Here the defendants entered on vacant land. Those cases, therefore, are not applicable. If the doctrine of the lessors is to prevail, a possession taken of vacant land and continued uninterruptedly for 19 years, may be destroyed by a prior naked possession for one year taken 50 years before.
In ejectment, the inquiry is not as to the title of the defendant. The issue between the parties is, whether the lessor of the plaintiff has a title to the possession, and the -whole burden of proof lies upon him. The plaintiff must show a higher and better title than that of the defendant. Now nothing is a higher title to land than actual possession, unless it be the right of possession. And the. plaintiff, in this case, is-bound to show such a right. If this is not *351 tht rule of law, then a defendant in actual i2osse~sion must prove a legal title by deed against a person claiming on a mere antecedent naked possession: a doctrine extremely hard and inconvenient. The defendants entered into possession of the premises in 1795, as the true and legal owners, and have continued in the uninterrupted possession for above 14 years, and have made very valuable improvements, and are now called upon by the plaintiff to give up that possession, on no proof of title whatever, except a mere naked possession for a few years, taken 50 years ago. To induce the court to sanction such a doctrine^ there must be some cleat, decided, and inflexible rule of law.
In ejectznent the lessor of the plaintifF must have a right of en~ try.* He must have the actual right of possession, or the right of property. Nothing short of this will give him a right to reeover, unless against a person entering by wrong. Coke† defines the component parts of a title, and lays down the same rule. None of the cases decided in this court in which ejectrnenfs have been brought on the ground of prior possession, to be found in the reports, militate against the doctrine for which we contend.‡ It will be found in all of them, that the defendants were intruders or trespassers.
The plaintiff, in this case, has shown no fraud, or force, or wrong, on the part of the defendants; no declarations or admissions by them of the claim of the plaintiff. Nor has the plaintiff shown any documentary evidence of title. On the contrary, the de fendants are bona fide purchasers, entering under a claim of title, and holding a continued possession, and making valuable and permanent improvements.
Will it be said that the party having died in possession and a descent cast, alters the case ? A wrongful possession acquires no force or validity from a descent cast, unless it has been so long as to amount by law to a right of possession, and so tolls the right of entry. A mere possessor cannot avail himself of a constructive possession; but must show an actual possession within 20 years and in the present case more than 20 years have elapsed since any actual possession by the ancestor of the lessors. Here was not n, recent possession, on which the defendants have entered, but an ancient possession taken 50 years ago. The defendants entered, as rightful owners, not as abators or trespassers„
Again, a mere possessor, without right, cannot avail himself of the fact of being driven out by a public enemy,' so as to claim the *352 benefit of a legal or constructive possession, during the time of Ms ejection. This constructive possession is allowed only in favour of the person who was in possession with right. Nor can the lessors claim the privilege or benefit of infancy, for they were adults more than 20 years ago; and having suffered that period to elapse, the plaintiff cannot avail himself of that plea. In the year 1792, six years after Henry R. Teller came of age, he was in the city of New-York. It is stated by one of the witnesses that he was, in fact, an apprentice in the city in the year 1787. If he was too poor, as the witness suggests, to prosecute his claim, he was not Incapacitated to give notice of that claim. He might have asserted his rights at the period of his coming of agé, as well as 20 years afterwards.
Next, the defendants showed an outstanding title sufficient to bar the plaintiff. The patent of the 10th of April, 1696, though appearing, on the face of it, to grant an estate to the patentees in joint tenancy, we have shown to have been, in fact, a grant of an estate in trust for eight others; and that trust has been executed. Admitting that it was a joint tenancy in the patentees, still it was a title out of the lessors. Having shown that the original patent from the Dutch governor to Cornelius Van Bursum could not be found after the most diligent search, we had a right to rely on the recital in the subsequent patent of confirmation, and the petition of the patentees on which it issued, as evidence of the original patent. Where a deed is in the name of one person, yet if it can be shown that the consideration was paid by another, there will be a resulting trust for him.* And a renewal of a lease by a guardian or trustee has been held to be for the benefit of the or cesto/ que trust. Then we contend that Kip, Kiersted and Teller were mere trustees for Cornelius Van Bursum and his heirs. By his will his estate was given to his wife Sarah, who afterwards made her will, and appointed these very three patentees her executors. Being executors, and having obtained a patent or grant of confirmation founded on the original grant to her husband, they must have held the estate in trust for her devisees. It may be objected that Mrs. Van Bursum was .not competent to make a will to pass real estate. But there was at that time no English statute regulating the subject, applicable to the colony of New- York ; and we must presume that it was made agreeably to the law of the colony. But if considered as declarative of the will and intent of the testator, it is sufficient. But the deed from Roelojf Kiersted, one of the children of Sarah *353 Van Bur sum, to Johannis Kip, of the one eighth part of the lands, is conclusive evidence on this subject. And after so long a lapse of time the legal presumption is, that the trust has been executed in favour of the cestui/ que trust.*
Hoffman and T. A. Emmet, contra.
The court, in the case of Smith, ex dem. Teller, v. Burtis & Woodward, (9 Johns. Rep. 197.) have decided the point as to possession. The court there said, “We may infer title from the ten years’ possession* sufficient to put the defendant on his defence.” And we contend* that this possession, in law, amounts to a presumptive evidence of a fee. J. Teller, the ancestor, entered on the premises as owner, and erected a house, which he occupied during his life, without acknowledging the right of any other person, and he died, leaving his wife and family in quiet possession. It is said, however, that the property afterwards became vacant and derelict'. But the family of Teller did not voluntarily abandon it; they were expelled by a public enemy, who took possession of it, and kept it, by right Of conquest; and by the treaty of peace of 1783, they were revested in the same title and estate as they held when they were dispossessed. If, then, the possession is to be deemed, by construction of law, as remaining in the lessors, it is prima facie evidence of a fee, and is conclusive against the defendants, until they show a better title. In Jackson, ex dem. Ludlow and others, v. Myers,† and in Nase v. Peck,‡ the same principle is laid down, that the prior possession is evidence of an estate in fee; and the vacant possession afterwards is deemed the possession of the person having the right.
The plaintiff, on the evidence of possession, was entitled to recover the whole or none. It is impossible, by any rule of law, that he should recover a part only. The prior possession set up by him, as evidence of right, must be taken as evidence of the whole right. The charge of the judge was, in this respect, erroneous. The jury, by their verdict, have made the defendants tenants in common with the lessors of the plaintiff. When the defendants showed tillo to a part, the plaintiff’s title by possession was gone, and he was bound to show a title to the part he claimed before he could recover.
[Kent, Ch. J.
We have often said that where a person dies *354 possessed of land, it is prima facie evidence of a title in his heirs* by descent.]
Blaclcstone* lays down the principle, that if B. the wrongdoer dies seised of the land, his heir has not only a bare possession, but an apparent jus possessionis, or right of possession» Runnington† says, the “ law presumes the possession transmitted from the ancestor to the heir to be a rightful possession, until the contrary is shown; and, therefore, the mere entry of him who has the right will not be allowed to evict the heir.” Buller‡ lays down the same doctrine. “If the plaintiff prove that A. was in possession of the premises in question, and that his lessor is heir to A. it is prima facie; for it shall be intended that A. had seisin in fee, till the contrary appear.” Talbot’s Case§ confirms the doctrine as to the effect of a prior possession, and descent cast, independent of the question of a disseisin.
The action of ejectment is, in truth, an action of trespass, to which an execution is added, giving the party prevailing the possession of the thing itself. You may try the tifie or not; but if the party does not think proper to show a title, he may try nothing but the right of possession.ǁ Prior possession is evidence of a fee; the lowest evidence, it is true; but unless rebutted by higher' evidence, it must prevail. The subsequent possession, when rebutted by this prior possession, which is evidence of a fee, cannot prevail. It is undoubtedly true, that the lessor in ejectment must recover on the strength of his own title; and we contend that the prior possession show'll is that title, and sufficient until the defendant show's a better title.
In Allen v. Rivingtonin,** which there was a special verdict, it is said “ the matter of law was never argued, because it appeared upon the record that the lessor of the plaintiff had a priority of possession, and there was not any title found for the defendant.” “ And the priority of possession, alone gives a good title to the lessor of the plaintiff against the defendant, and all the world, excepting against the heir of the devisor.” And in Bate-man v. Allen,†† there was a special verdict in ejectment, and Williams, Serjeant, moved, “ that forasmuch as in all the verdict it is not found that the defendant had the primer possession, nor that he entered in the right or by the command of any who had title, but that he entered on the possession of the plaintiff, without *355 title, his entry is not lawful.” And so all the court held, and judgment was given for the plaintiff.
It has been attempted by the defendants’ counsel to raise a distinction between the cases cited and the case before the court, on the ground that the premises in question were vacant when the defendants entered. It is true, that in common parlance, there may be a vacant possession; but the law knows of no vacant possession. On the death of Isaac Teller there was a descent cast, and an actual as well as a legal possession, until his heirs were turned out by the public enemy. The possession of the mother enured to the benefit of the heir,* and the heir so seised died, and a descent was cast to his heir. Watkins, in a note to his edition of Gilbert’s Treo- . iise on Tenures,† says: “As the heir has the right to the hereditaments descending, the law presumes that he has the possession also. This presumption may, indeed, like all other presumptions, be rebutted; but if the possession be not shown to be in another, the law concludes it to be in the heir; as the freehold is never considered as vacant, or in abeyance.” The lessor here, having the possession in law, had a right to reduce it to a possession in fact; or, in other words, had a right of entry, and therefore had a right to bring an action of ejectment. The entry of the defendants was an abatement. And supposing this to be a writ of right, we should stand in the same situation with the plaintiff in Nase v. Peck, who prevailed on the ground of his prior possession.
Then we have shown aprima facie evidence of title in the lessors sufficient to entitle the plaintiff to recover; and the defendants have shown no title in themselves, but, at most, a title to two eighths out of the lessors. They have not proved an adverse possession for 20 years. But the plaintiff has shown an actual possession for 10 years, and a constructive or legal possession for more than 10 years after, deducting the period of the war.
Then as to the title set up under the Van Vleeck deed of 1753. We contend, that on the face of it, it is not a genuine deed. There are erasures in it not noted, and it was proved 54 years after its execution. It has no pretension as an ancient deed, for possession did not accompany it. No account is given of it; and it is attended with suspicion. But admitting it to be genuine, it does not include the premises.
[Here the counsel examined, at great length, the location of the premises, and discussed the evidence adduced at the trial. The deed of partition and other deeds given in evidence by the defend *356 ants were criticised, and their effect, as contended for by the defenciants’ counsel, denied.]
B.'B. Ogdeú, in reply. By the statute of limitations, “no person shall make an entry into lands, but within 20 years after his right and title first accrued.” Now, in the present case, there is no pretence that there was a possession by the lessors, or then-ancestor, within' 20 years prior to the commencement of this action. It is laid down by Butter,* that if the lessor of the plaintiff is not able to prove himself or his ancestor to have been in possession, within 20 years before action brought, he must be nonsuited. But it is contended on the part of the plaintiff, that there was a possession within 20 years, because the premises were in possession of Isaac Teller until his death, and, afterwards, in possession of his family, until driven away by the enemy; and that the possession afterwards must be presumed in law to continue in his heirs, until they were in a situation to assert their legal rights. To this we answer that there must be an actual, not a presumptive or constructive, possession within the 20 years. In Jackson v. Schoonm aker,† the Chief Justice describes the kind of possession which is sufficient to toll the right of entry. ; “ There must be,” he says, “ a real and substantial enclosure, an actual occupancy, a possessio pedis, definite, positive and notorious.” Again, there never can be a constructive possession in favour of a person whose whole claim rests on mere possession.‡ And hence the rule is, that where there is no actual possession, the law will presume the possession to be in him who has the right. The lessors, therefore, in order to avail themselves of this constructive possession, must first show that the legal title to the premises was vested in them. A constructive possession may aid a title to lands, but can never create one. A title in ejectment may be created by possessionbut then it must be a possession in fact for 20 years.||
Again, it is said that Isaac Teller was in possession of the property for 10 years, and died in possession; but unless a descent cast tolls the right of entry, the heir stands on no better ground than his ancestor. And this court, in Smith, ex dem. Teller, v, Buriis ¿f Woodward,** decided that the descent cast did not toll the right of entry, for there was no actual disseisin. A descent cast that does not toll the right of entry can have no effect against a bona fide purchaser in possession; though it has an effect against a mere intruder, for the law will not suffer- the pos? *357 session to be changed. Gilbert* spealcs of the heir of the disseisor, after descent cast, and Wallcins, in his note on this page, has constant reference to the heir of the disseisor. So Blackstone spealcs of the heir of the disseisor, and cites Littleton where he treats altogether of disseisors and abators. A descent cast • gives the heir the same right his ancestor possessed, as against an abator or intruder; but such descent operates nothing as against a person entering as a bona fide purchaser. Buller† cites Salk, 421. and the case of Stokes v. Berry, in Saljc. confirms the doctrine for which we contend. Runnington, also, a few pages after the case cited by the other side, says the same. Buller lays it down that the plaintiff must show an actual possession within 20 years, or what, in law, is equivalent. “ Possession,” says Lord Mansfield, ‡ “ gives the defendant a right against every man cvho cannot show a good title.” The party, therefore, cvho seeks to change the possession by an action of ejectment, must first establish a legal title. This legal title must be either by deed, or by the right of possession, neither of which have been shown by the plaintiff; for he has not shown an actual possession within 20 years. The same rule as to a possessory title which applies to a defendant, must be applied to the plaintiff.
In the cases decided in this court, where a recovery has been liad upon a possession of less than 20 years, it will be found that the defendants did not pretend to have title, and were considered as mere trespassers or intruders. But the defendants cannot be considered in that light. They were bona fide purchasers, for a valuable consideration, from persons in possession and claiming title, and they have continued in the quiet and uninterrupted possession of the property, th#s fairly purchased, for 14 years. If the prior possession shown by the plaintiff was sufficient to entitle him to recover, then it was conclusive ; and it was not competent for the defendant to go into any evidence of title at all; for if the plaintiff showed such a possession as would entitle him to recover, it must be such a possession as gave him a good title in ejectment. Novr, that must be a possession that tolls the right of entry of him who has the legal right. And the right of entry being tolled, the defendant must be driven to his real action.
Again, if the plaintiff can recover on a prior possession of 10 years, against a person who has been in possession 15 years, must it not be on the weakness of the defendants’ title rather than on the strength of his own, contrary to a leading principle in the action of ejectment ?
*358 Again, a right acquired by possession merely, never can entitle a pia;n(jjf jn ejectment to recover, unless the right thus acquired by possession would haVe enabled the plaintiff, while his possess*on continued, to have retained it against the lawful owner. If the plaintiff should now be restored to possession, on the ground of the prior possession of 10 years, would that be any defence in an action of ejectment brought against him by.the rightful owner? On what principle is it, then, that possession shall be a weapon of offence to a plaintiff, and not be a protection to a defendant.
In Demi v. Bernard,* Lord Mansfield speaks of a possession of 20 years as giving a good title to a plaintiff in ejectment, thereby impliedly admitting that a possession for less than 20 years would not be a good title. A possession for 20 years is a good title to the plaintiff, for this reason only; that it is, by the statute of limitations, a good title for the defendant; and because it tolls the right of entry of the legal owner. By continuing in possession 20 years, he may defend his possession in an action of ejectment. And if he loses the possession, he may recover it again, because the right of entry of the legal owner being tolled, he alone has the title to possession. In Stokes v. Berry† it is said, by Holt, Ch. J. that the plaintiff in ejectment may recover on a 20 years’ possession, because, like a descent, it toils the right of entry, and gives a right of posses-' sion. No possession for a less time than 20 years tolls the right of entry; and, therefore, in the opinion of Lord Holt, a possession short of 20 years would not be a good title for a plaintiff in ejectment.
In this view of the subject, one year’s possession is as good as 19 years $ that is, neither is good for any thing, either as title in a plaintiff or defendant, in an action of ejectment. • In Allen v. Rivington.‡ plaintiff was in possession, and the defendant, entered upon him and ousted him, and showed no title. The defendant was a trespasser and intruder. So in Bateman v. Alienǁ the plaintiff was in possession, and the defendant entered upon him without any title. But the defendants, bona fide purchasers, entering peaceably and continuing in the quiet possession, as owners, can never be regarded as trespassers or intruders. It is admitted that this is an action of trespass, and if so, the plaintiff must prove property in himself, or a right of possession, or actual possession,
Again, the defendants have showed title to two eighths, and must, therefore, be tenants in common with others; either with the lessors, or with some other persons. If with other persons, then *359 the possession of the defendants must enure to the benefit of those other persons, their co-tenants in common, because the possession of one tenant in common is the possession of the other. Then if the plaintiff cannot recover the two eighths, neither can he recover the six eighths, or share of the other co-tenants, for the possession of the defendants and the other co-tenants is one and the same.
If the defendants were tenants in common with the lessors, then they, or those under whom they claim, must be tenants in common with Isaac Teller, for it is not pretended that they are tenants in common with the lessors, by virtue of any grant from them since the death of their ancestor; and if tenants in common with Isaac Teller, then his possession was for himself and his co-tenants.
Kent, Ch. J.
delivered the opinion ‘of the court. The most important point in this case is, whether the lessors of the plaintiff showed sufficient evidence of title to authorize a recovery.
They showed that in May, 1768, J. Teller, their ancestor, entered into possession of a house which he had built two or three years before on the negroes’ burying ground, and which had, previously to his entrance, been occupied by his tenant. That he had a fence enclosing the burying ground, and claimed it as his property, and pastured it, and kept the key of the gate leading to the ground, and took payment for the use of the ground, and that it was known and called by the name of his land and fence. That he continued in possession until his death in June, 1775, and his family continued in possession afterwards, and until the commencement of the troubles, (as one of the witnesses expressed it,) and which undoubtedly alluded to the invasion of New-York in 1776; and that then the family left the city and retired into the country, and the British army took possession of the house and lot, and during the course of the war, and while under the dominion of the British, the house and fences were destroyed. That the premises claimed are part of the burying ground so possessed by J. Teller, and except the occupation by the British troops, no possession adverse to the claim of the lessors took place, as to the land now demanded, until the year 1795.
These facts were,- upon the'trial, declared to be sufficient to warrant a recovery. They are prima facie evidence of right, an.l it is not necessary that the plaintiff in ejectment should, in every ease, show a possession, of twenty years, or- a paper title. A pos *360 session for a less period will form a presumption of title sufficient *° Pu* ffi® tenant upon his defence. This was intimated by the court in respect to this very claim, in the case of Smith v. Burtis & Woodward, (6 Johns. Rep. 218.) and a recovery was permitted in that case upon the same presumptive evidence of right. (9 Johns. Rep. 174.) A prior possession short of twenty years, under a claim or assertion of right, will prevail over a subsequent possession of less than twenty years, when no other evidence of .title appears on either side. There are many decisions of this court which look to this point. (Jackson v. Hazen, 2 Johns. Rep. 22. Jackson v. Myers, 3 Johns. Rep. 388. Jackson v. Harder, 4 Johns. Rep. 202.) It is, however, to be understood in the cases to which the rule of evidence applies, that the prior possession of the plaintiff had not been voluntarily relinquished without the animus reveriendi, (as is frequently the case with possessions taken' by squatters,) and that the subsequent possession of the defendants was acquired by mere entry without any lawful right.
That the first possession should, in such cases, be the better evidence of right, seems to be the just and necessary inference of law. The ejectment is a possessory action, and possession is always presumption of right, and it stands good, until other and stronger evidence destroys that presumption. This presumption of right every possessor of land has, in the first instance, and after a continued possession for twenty years, under pretence or claim of right, the actual possession ripens into a right of possession which will toll an entry. But until the possession of the tenant has become so matured, it would seem to follow, that if the plaintiff shows a prior possession, and upon which the defendant entered without its having been formally abandoned, as derelict, the presumption which arose from the tenant’s possession is transferred to the prior possession of the plaintiff, and the tenant, to recall that presumption, must show a still prior possession, and so the presumption may be removed from one side to the other, toties quoties, Until one party or the other has shown a possession which cannot be overreached, or puts an end to the doctrine of presumptions founded on mere possession, by showing a regular legal title, or a right of possession.
It is stated in Jenkins (Cent. p. 42.) that “ the first possession, without any other title, serves in an assize for land,” and the assize, like the ejectment, was a possessory action. In Bateman v. Allen, (Cro. Eliz. 437.) it was ruled that the plaintiff was entitled to recover in ejectment, -when it was found by special verdict, that *361 the defendant had not the first possession, nor entered under title, but upon the plaintiff’s possession. In Allen v. Rivington, (2 Saund. 111.) the decision is still more strongly and pointedly in favour of the force in a prior possession. A special verdict was taken in ejectment, but Saunders adds, “ that the matter of law was never argued, because it appeared upon the record that the lessor of the plaintiff had a priority of possession, and there was not any title found for the defendant. And then the priority of possession alone gives a good title to the lessor against the defendant, and it was adjudged for the plaintiff.”
In the present case, there was peculiar force attached to the prior possession on which the plaintiff relied. There was a descent cast during its existence, and the infant heirs of the ancestor were driven from the actual possession by a public enemy, who destroyed the improvements on the property. According to the equity of the jus postliminii, the law revested the possession in the heirs on the removal of the hostile force. Ouster by the enemy ought not, of itself, to work, in legal contemplation, a discontinuance of possession. The possession was, by construction of" law, in the heirs of J. Teller, until an actual adverse entry in 1795, upon that constructive possession.
This testimony being sufficient to entitle the plaintiff to recover, what did the defendants produce in opposition to it? They showed no prior possession, nor did they show a subsequent adverse possession of above fifteen years, nor did they show title in themselves. The effect of the evidence was to show a subsisting title out of the plaintiff; and if the deed of 1753, to Mary Van Vleeck, was not genuine, or, if genuine, if it did not cover the premises, (and this was the better conclusion,) the defendants did not succeed, unless it be as to two eighths of the premises, and for that portion of them the verdict was not taken.
The motion to set aside the verdict ought, therefore, to be denied.
Motion denied.

 Allen v. Rivington, 2 Saund. 110.

 Runn. on Eject. 10-14. Burr. 119.

 Co. Litt. 266, a.

 3 Johns. Cas. 108, 128, 118. 2 Johns. Rep. 22. 4 Johns. Rep. 202.

 Prec. in Ch. 31. 1 Atk. 59. 2 Atk. 150. 257. 2 Vent. 361.

 2 Term Rep. 695. 1 Term Rep. 758. 7 Term Rep. 2. Bull. N. P. 110.

 3 Bl. Com. 176—178.

 Runn. on Eject. 12.

 Bull. N. P. 103. 109. Salk. 42l.

 8 Co. 101.

 2 Selw. N. P. 618.

 2 Saund. 111.

 Cro. Eliz. 437.

 7 Term Rep. 786. 3 Wils. 516.

 Gilb. Ten. 21. (4th edit.) n. 20. p. 370.

 Bull. N. P 102. 1 Burr. 119.

 2 Johns. Rep. 230.

 3 Johns. Rep. 388.

 2 Johns. Rep. 234.

 9 Johns. Rep. 197.

 Gilb. Law of Tenures, 21.

 Bull. N. P. 103.

 Burr. 2487.

 Cowp. 595.

 2 Salk. 421. 2 Ld. Raym 741.

 2 Saund. 111.

 Cro. Eliz. 437.