Clute *v.* Voris.

CLUTE *vs.* VORIS.

31  511
132a  84

A person who has been evicted from the possession of lands, can, without showing any title in himself, maintain an action for them, against the grantee of his disseisor, who is also without title.

One who is a purchaser at a sale under the foreclosure of a mortgage made by a party disseised, while in possession, can assert the same rights as the disseisee, and recover upon his possession, without proving that he has ever been in possession, himself.

ACTION to recover possession of land at New Rochelle, in Westchester county, which Samuel B. Broad, being in undisturbed possession under claim of title, on March 25th, 1844, mortgaged to one Clinton Roosevelt.    Soon after he gave permission to William Broad, his brother, to occupy a room in the house on the premises, and under a verbal license from him, in April or May, 1844, Albert Badeau forcibly, as against Samuel B. Broad, entered.    In the fall of 1844, the defendant entered under color of purchase from Badeau, and has since occupied.    In 1855 default was made on Roosevelt's mortgage, it was foreclosed, and at the foreclosure sale the plaintiff purchased the premises in question.    The referee found that Broad was lawfully in such possession as would have sustained a suit brought by him against Badeau in default of his showing a right to enter, but that as against the defendant entering peaceably under color of purchase from the disseisor, Broad's action would not lie unless he showed title; and secondly, that the plaintiff, never himself having been in

actual possession, and claiming merely as Broad's grantee, could only recover by showing title. The referee found that no title was proved in Broad; he also rejected the only evidence offered to show title in Badeau, or the defendant; so that, by his finding, title was shown in neither the plaintiff nor the defendant. Judgment was entered, at a special term, upon the report, dismissing the complaint, with costs, and the plaintiff appealed.

*John E. Parsons,* for the appellant.

*S. F. Cowdrey* and *J. S. Lawrence,* for the respondent.

*By the Court,* EMOTT, J. The land for which this action was brought was owned originally by one Sarah Norroway Clarke. She died in 1810, intestate, seised and in possession of the premises. She was unmarried, and left two sisters, both of whom were aliens, and an aunt, Sarah Norroway, the wife of Anthony Norroway. This Mr. and Mrs. Norroway were living upon the property with Miss Clarke, and after her death they continued in the occupation of it as long as they lived. Anthony Norroway died in 1831, and Sarah Norroway in 1832. It does not seem that they made any claim to be the owners of the property, although, so far as the facts appear, Sarah Norroway was the only person capable of inheriting lands, who was or could have been an heir of Miss Clarke, her niece. Mr. and Mrs. Norroway were inhabitants of this country before the revolution, and continued here afterwards, thus becoming citizens, and capable of taking lands by descent. The two sisters of Miss Clarke were aliens, as I have already said. One of them was a Mrs. Walker. She had an illegitimate daughter, one Mary Ardley, who came to this country after the death of Miss Clarke, and lived upon the premises with the Norroways during their lives, and afterwards until the year 1841. Both she and her mother were aliens, and independent of the defect in her birth, both of them were on this

Clute *v.* Voris.

account disqualified from inheriting to Miss Clarke, or at least from being a source of title to either of the parties in this suit. In 1836-7, Mrs. Broad, the other sister of Miss Clarke, came to this country, and she also lived upon the premises from that time until her death, which occurred in 1841. Then Samuel B. Broad and William R. Broad, her sons, came upon the lands and lived there, with Mary Ardley, until some time in 1842, when Miss Ardley left and returned to England. After this, Samuel B. Broad had possession of the premises until he was disseised by the defendant's grantor. Neither Mrs. Broad nor her son William was ever naturalized. Samuel B. Broad was naturalized in 1844. In March of that year Samuel B. Broad, who was then in possession, executed a mortgage of the premises to Clinton Roosevelt, which was subsequently foreclosed and the property bought by the plaintiff. After this mortgage and before the foreclosure, the defendant's grantor entered and disseised Broad, and the plaintiff has never been in actual possession. Unless through Mrs. Norroway, the plaintiff, or his mortgagor or grantor, cannot trace a title up to Miss Clarke, on account of the alienage of the mother of Broad. Whether title could be made to Broad through Mrs. Norroway was a point not discussed upon the argument, and which I shall not consider, as it is not material in the view I take of the case. I assume that the plaintiff must stand entirely upon the possession of Broad, without proof of title. The defendant's grantor was one Badeau. He entered upon the premises forcibly and disseised Samuel B. Broad in 1844. He seems to have made a claim of right or title from other parties, but no such title is shown, nor any right in him. In the same year he conveyed to the defendant, who then went into possession.

The first question which the case presents is whether a person who has been evicted from the possession of lands, can, without showing title in himself, maintain an action for them against the grantee of his disseisor, who is also without title. Another question is, whether the present plaintiff, who is a

purchaser under a foreclosure of a mortgage made by the party disseised while in possession, can assert the same rights as the disseisee, and recover upon his possession.

It is conceded that Broad could have recovered against Badeau upon the strength of his prior possession, but it is contended that he could not recover against the defendant, who received a conveyance from Badeau while he was in possession and entered peaceably. Or, if Broad could recover against the defendant, it is urged that the plaintiff could not, because the mortgage made by Broad was not foreclosed until after he was disseised, and the plaintiff personally has never been in actual possession.

Questions of this nature have been more frequently presented to the courts of this than of our mother country, by reason of the greater frequency of their occurrence in a country whose settlement is comparatively new and sparse. There are, however, some early cases upon the first point, cited from the English books. Thus in *Bateman* v. *Allen*, (*Cro. Eliz.* 437,) a special verdict found an entry on the plaintiff's possession, without 'finding title or a prior possession in the defendant, and the plaintiff had judgment. The same principle will be found in *Allen* v. *Rivington*, (2 *Saund.* 111,) to the effect that where priority of possession appears for the plaintiff and no title in the defendant, the plaintiff shall have judgment.

In *Jackson* v. *Hazen*, (3 *John.* 22,) the principle was applied in favor of a plaintiff who had been disseised by a tortious entry without any claim or colour of right or title from any person. The same was the case in *Jackson* v. *Harder*, (4 *John.* 202, 210.) The defendant showed no pretense or color of title to justify his entry, and the plaintiff recovered against him on a possession of eight or ten years under a claim and color of title. *Smith* v. *Lorillard*, (10 *John.* 338,) is a leading case, and cannot be distinguished from the present case upon the question I am now considering. The defendants there were purchasers from a disseisor, bona fide purchasers,

Clute *v.* Voris.

as was urged by their counsel, and had made valuable improvements, and the argument was pressed upon the court that they were not intruders nor trespassers. But the court refused their assent to any distinction in their favor on that ground. Ch. J. Kent said, " A prior possession, short of 20 years, under a claim or assertion of right, will prevail over a subsequent possession of less than 20 years, when no other evidence of title appears on either side." The rule is explained as requiring that the prior possession of the plaintiff should not have been voluntarily relinquished without the *animus revertendi*, and the subsequent possession of the defendant should have been acquired by mere entry without any lawful right. All the facts which the doctrines of this judgment require would be found in the case at bar, and the judgment would apply precisely to this case, if it were between Broad and the defendant as grantee of Badeau. The referee seems to have supposed that some peculiar presumption was drawn in favor of the plaintiff, in *Smith* v. *Lorillard*, upon the facts of that case. But the chief justice explains with admirable clearness the presumptions upon which the law acts, and how they are shifted by proof of successive possessions. The first or oldest possession which can be shown affords a presumption which can only be overreached by proof of title, or a subsequent adverse holding long enough to bar an entry. The cause was decided by the application of this presumption or prima facie proof of title arising out of prior possession by the plaintiff, and the want of title in the disseisor or the defendant, his grantee, to overcome that presumption. So the case has been understood and accepted in all the subsequent decisions. In *Jackson* v. *Rightmyre*, in the court of errors, (16 *John.* 325,) the rule is stated from the case of *Smith* v. *Lorillard*, by the chancellor, that a prior possession under a claim of right not voluntarily abandoned, will prevail over a subsequent possession without lawful right, where no proof of title was made on either side. That case was taken out of the rule because the junior possession was obtained under a

judgment in ejectment against the first. possessor, although this judgment was recovered by default. The presumption founded on the prior possession was destroyed by its termination by the judgment of a court. The same principle will be found in *Jackson* v. *Hubble*, (1 *Cowen*, 613,) in *Jackson* v. *Blodgett*, (5 *id.* 202,) and in *Jackson* v. *Walker*, (7 *id.* 637.) The case of *Whitney* v. *Wright*, (15 *Wend.* 171,) again expressly recognizes the same doctrine, and that case was also distinguished from those first cited by the abandonment of the prior possession, and by the fact that the defendant entered into his subsequent possession under a recovery in an action of ejectment.

That the defendant is in by a conveyance from Badeau, and was not himself the original disseisor, does not affect the question. The deed by which he claimed did not afford evidence of title which could rebut the presumption from the prior possession of Broad. It could not convey any other or greater right than the possessory right belonging to Badeau, which was inferior to that of Broad. Nor was it an act which of itself so changed the nature of the estate, as to put the disseisee not only to a different remedy, but to additional proof. An alienation by a disseisor did not have, in all respects, the same effect as his death and the consequent descent. A descent cast was held to toll an entry, for reasons which are not applicable to the case of a conveyance. That was upon the ground that the heir of the disseisor, upon whom the descent was cast, came in entirely by the act of the law; that the disseisee should not have allowed the disseisor to remain in possession all his life, and upon the feudal reason that there should be a tenant to do the feudal services after the death of the disseisor in possession. (*See Co. Litt.* 238, *et seq.* ; *and Hargrave & Butler's Notes, and* 1 *Black. Com.* 176.) Even in the case of a descent cast, however, although the entry was taken away, the disseisee had his writ of entry or of assize "in the per" as it was said, against the heir, and the same writ against the feoffee or alienee of the disseisor. Neither

the descent nor conveyance divested or destroyed the right of possession in the disseisee, or put him to a trial of his mere right or title. It only drove him to an action to dispossess the heir, when an entry alone would have dispossessed the ancestor. All these writs of entry and of assize were strictly possessory actions, and it was not until these were barred by time or by a judgment on the possession, that the party ousted was driven to a writ of right. At common law two descents or two conveyances cut off the writ of entry or of assize, but this was remedied by the statute of of Marlbridge (52 *Hen.* 3, *ch.* 30) which introduced a new writ called a writ of entry in the post, which lay without mention of degrees, in all cases where the original entry or ouster was wrongful, and the subsequent possession had not been protected by a judgment, or lasted long enough to bar a possessory action. In the case of *Smith* v. *Lorillard* it was assumed by the court, without any reasoning to prove it, and against the argument of the defendant's counsel, as I have already noticed, that the purchaser from the disseisor was in no better condition than the disseisor himself. The action of ejectment was the successor and substitute of the ancient possessory real actions, and the rules by which these actions are to be tried cannot be unlike.

The referee was also in error in supposing that the plaintiff could not recover because he personally had never been in possession. There is of course a sense in which it is true that the grantee of a person who has or has had the possession of real estate, cannot recover against a disseisor where his grantor might. But the strength of his title would not avail a party in a case where he was met with such a difficulty; nor is it strictly true that a deed which conveys no title does not convey any possession, that is any right to possession, for actual possession of course is not conveyed by a deed. The difficulty in the case supposed by the referee would be, that the deed would be void because made by a person out of possession, and would not convey any thing. The importance of the question of actual possession, in such a case, however, would

be to determine whether the grantor or grantee shall bring the action. If the grantor was not in possession when the deed was made, the deed is void as to the person actually in possession, and the action must be brought in the name of the grantor. Even in that case the action is not lost, nor are the principles upon which it proceeds changed. If Broad had made a deed of these premises to the plaintiff while he was out of possession of them, the consequence would be not that the plaintiff could only recover on proof of his title, but that he could not recover at all. The action must have been brought in Broad's name, and then it would have been tried upon the same principles which must govern this suit.

But this is not the case of a deed made while the grantor was out of possession. The plaintiff's title came through the foreclosure of a mortgage, made while the mortgagor was in possession. The actual deed to him was made in pursuance of a judicial sale based on this mortgage, and was not open to objection because the grantor or mortgagor was not in possession when the sale took place. It vested in the grantee all the title of the mortgagee, and carried with it all the title of the mortgagor, and related to the date of the mortgage. It was as if Broad had conveyed to the plaintiff at the time when he made the mortgage. The plaintiff therefore stood precisely in the place of Samuel B. Broad, and can recover in this action upon the same proof that he could.

As the decision of the referee was incorrect upon both these points, the judgment entered upon his report must be reversed and a new trial ordered at the circuit, the costs to abide the event.

[DUTCHESS GENERAL TERM, May 14, 1860. *Lott, Emott* and *Brown,* Justices.]